1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   STEVIE J. STEVENSON,                    No. 2:24-cv-1315 DC CSK P

12                        Plaintiff,
                                             FINDINGS AND RECOMMENDATIONS
13          v.

14   LISA WEICHOLD, et al.,

15                        Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se.  Defendants' fully briefed motion to dismiss

18   is before the Court.  As discussed below, it is recommended that the motion be granted, and this

19   action be denied with prejudice.

     I.     BACKGROUND
20
            On May 7, 2024, plaintiff filed a complaint alleging that defendants Lisa Weichold and J.
21
     Popovits retaliated against plaintiff in violation of the First Amendment.[1]  (ECF No. 1.)
22
            On February 10, 2025, defendants filed a motion to dismiss.  (ECF No. 22.)  Plaintiff filed
23
     an opposition on March 5, 2025.  (ECF No. 25.)  Defendants filed a reply on March 19, 2025.
24
     (ECF No. 26.)  In the reply, defendants point out that they received a slightly different copy of
25

26   _____

27   [1] By separate order, and pursuant to plaintiff's election, plaintiff's due process and Eighth
     Amendment claims contained in his first cause of action were dismissed without prejudice on
     November 5, 2024.  (ECF No. 15 at 5.)  Plaintiff's retaliation claims are contained in plaintiff's
28   second cause of action.  (ECF No. 1 at 9-14.)

                                                 1

1    plaintiff's opposition than what was filed with the Court, and it included a few more pages.  (ECF

2    No. 26 at 5 n.2.)  Indeed, plaintiff's opposition (ECF No. 25) is 119 pages long, and the

3    defendants' copy of the opposition is 134 pages (ECF No. 26-1).  In order to avoid confusion, the

4    Court will cite the opposition provided to defendants because that is the opposition they

5    responded to.

6            On April 10, 2025, plaintiff filed a document styled, "Opposition and Objections to

7    Defendants' Reply in Support of Motion to Dismiss."  (ECF No. 27.)  On April 17, 2025,

8    defendants filed a motion to strike plaintiff's April 10, 2025 filing as an unauthorized sur-reply.

9    (ECF No. 28.)  On May 5, 2025, plaintiff filed an opposition to the motion to strike.  (ECF No.

10   29.)  On May 19, 2025, defendants filed a reply to plaintiff's opposition.  (ECF No. 30.)

11   II.      PLAINTIFF'S ALLEGATIONS

12           Plaintiff alleges that he was retaliated against by defendant Weichold, an office technician

13   at California State Prison, Solano ("CSP-SOL"), after plaintiff filed a grievance against her for

14   not being paid wages for his work, and defendant J. Popovits, an Associate Warden at CSP-SOL,

15   failed to intervene.  (ECF 1.)  Specifically, plaintiff alleges the following.

16           In August 2019, plaintiff began serving as Men's Advisory Council ("MAC") Executive

17   Chairman.  (Id. at 3.)  Plaintiff's job duties included attending meetings to discuss prisoners'

18   issues and concerns, and preparing agendas, minutes and memorandum which were then

19   disbursed to different departments by the office technician, plaintiff's supervisor.  (Id. at 3, 4.)  In

20   2019, while plaintiff was supervised by nonparty Brenda Lomeli, the agendas were always

21   created by plaintiff or inmate Bender, Facility "C" Secretary.  (Id. at 4.)  On August 9, 2019,

22   Warden Matteson issued a memo stating that plaintiff, as new MAC Chairman, needed access to

23   the computer to prepare MAC agendas, minutes, and memorandum.  (Id. at 12.)  Since plaintiff

24   began as chairman, he always used a CDCR-1637 memorandum form, placing "MAC" above the

25   word memorandum to indicate the memo was coming from the MAC.  (Id. at 9.)

26           Sometime in 2021, Brenda Lomeli was reassigned, and defendant L. Weichold was

27   assigned as office technician and plaintiff's supervisor.  (Id. at 5.)  In late July or August 2021,

28   defendant L. Weichold informed plaintiff he was no longer allowed to go to the law library during

                                                    2

1    work hours.  (Id.)  Plaintiff objected, citing preferred legal user ("PLU") access, and continued

2    going to the law library during work hours.  (Id. at 5-6.)  Sometime in September 2021, defendant

3    L. Weichold warned plaintiff that if he continued to attend law library during work hours, despite

4    his PLU status, she would not pay plaintiff at all.  (Id. at 5.)  Plaintiff had PLU status in

5    September and December 2021.  (Id. at 6.)  In December 2021, plaintiff learned he had not been

6    paid for November.  (Id.)  Plaintiff claims defendant L. Weichold withheld his pay, or portions of

7    his pay, from December 2021 through 2023.  (Id. at 6-7.)

8         In February 2022, plaintiff filed a grievance against defendant L. Weichold alleging she

9    was not paying him wages for the hours that he worked.  (Id. at 6, 10.)  On April 21, 2022,

10    plaintiff received notice from the grievance office that his claim regarding withheld wages was

11    redirected by the grievance office.  (Id. at 10 ¶ 2.)[2]

12         On May 2, 2022, defendant L. Weichold informed plaintiff he was no longer allowed to

13    send out any type of agendas to departments that were on state memorandum forms.  (Id.)

14    Plaintiff objected that the job descriptions for him and inmate Bender allowed them to use the

15    memorandum forms, and asked L. Weichold to provide him any memoranda or rules change that

16    prohibited such use.  (Id.)  On May 3, 2022, plaintiff was summoned to the office of defendant

17    Popovits, L. Weichold's supervisor.  Defendant Popovits told plaintiff that he was no longer

18    allowed to use the memoranda to correspond with other departments, and explained that

19    memoranda referencing CDCR was not for the MAC to use.  (Id.)  Plaintiff objected that since

20    2019 he had used the memos bearing CDCR at the top, even producing examples, but defendant

21    Popovits told plaintiff to remove the CDCR at the top and that would suffice.  (Id.)  Plaintiff

22    created a new memo form, which defendant Popovits approved.  (Id.)

23         On June 10, 2022, an inmate heard defendant L. Weichold tell the special purchase clerk

24    that plaintiff would not be in his position much longer.  (Id. at 10, 12.)  On August 2, 2022,

25    plaintiff was called to defendant Popovits' office and told to change the signature blocks, another

26    issue raised by defendant L. Weichold.  (Id. at 10.)  On August 4, 2022, defendant L. Weichold

27

28    _____
     [2]  Plaintiff does not indicate to whom the grievance was redirected.  (Id.)

3

1    refused to send out a MAC agenda to Food Services and the principal, stating she did not want the

2    word "Memorandum" on MAC documents.  (Id.)  Between August 17 and 19, 2022, plaintiff was

3    told MAC was no longer allowed to have paper towels and toiler paper in building #15.  (Id. at

4    11.)

5           On September 22, 2022, inmate clerks told plaintiff they were directed by L. Weichold not

6    to accept any paperwork from plaintiff.  (Id.)  Plaintiff asked defendant L. Weichold how to get

7    MAC agendas to other departments; she responded, "I don't care about the 602 you're still not

8    getting paid and if you put memorandum on any more paper I'm going to write you up and get

9    you removed from your job." (ECF No. 1 at 11 ¶ 12 .)  On September 29, 2022, inmate Bender

10   told plaintiff that defendant L. Weichold stated:  "If [plaintiff] prepares any more memorandums

11   CCI-II Richardson is going to give him a 115."  (Id. at ¶ 13.)  On October 5, 2022, plaintiff spoke

12   to Richardson who said he would not get involved and defendant L. Weichold would write

13   plaintiff up.  (Id.)

14          On October 12, 2022, plaintiff was served a rules violation report ("RVR"), No. 7231301,

15   for disobeying an order for writing memoranda under CDCR Title 15 § 3005(b).  (Id.)  On

16   October 14, 2022, plaintiff asked defendant L. Weichold why she wrote him up, arguing that his

17   job description signed by the warden permitted him to write memoranda.  (Id.)  Defendant

18   L. Weichold responded:  "You can write me up, I'm gonna write you up and you're gonna lose."

19   (Id. at ¶ 16.)  On October 20, 2022, plaintiff learned defendant L. Weichold had spoken to

20   Warden Matteson, who told her plaintiff was no longer allowed to send correspondence with

21   "memorandum" written on it.  (Id.)  On October 21, 2022, plaintiff called all department heads,

22   who confirmed they had no problem with "memorandum" written on plaintiff's correspondence.

23   (Id.)  On November 14, 2022, plaintiff spoke to Chief Deputy Warden Tyler about the RVR and

24   provided documentation supporting his use of memorandums.  (Id. at 12.)  Tyler told plaintiff that

25   neither Tyler nor Warden Matteson had a problem with MAC correspondence on memorandum

26   paper.  (Id.)  That same day, plaintiff received a second RVR, No. 7240664, for disobeying an

27   order for preparing agendas and correspondence on memorandum paper.  (Id.)  During both RVR

28   hearings, plaintiff argued he was allowed to write memorandums based on Warden Matteson's

                                                        4

1    2019 memo.  (Id.)  Plaintiff was found guilty of both RVRs.  (Id.)

2         Over a year later, on December 27, 2023, nonparty Correctional Counselor Rashid told

3    plaintiff he would not receive full points for work performance because he received all

4    unsatisfactory marks and defendant L. Weichold recommended plaintiff be removed from his job

5    assignment.  (Id. at 13.)  Plaintiff contends this recommendation was issued in retaliation for

6    plaintiff filing a grievance against defendant L. Weichold for failing to pay plaintiff his earned

7    wages.  (Id.)  In addition, defendant L. Weichold did not provide quarterly performance

8    appraisals to alert plaintiff about his alleged poor work performance.  (Id.)  Plaintiff immediately

9    filed another grievance against defendant L. Weichold "for conspiring to have him removed from

10   his job assignment."  (Id. at 13 ¶ 27.)

11        At some point after December 2023, plaintiff filed a grievance against defendant L.

12   Weichold for her refusal to pay plaintiff full wages.  (ECF No. 1 at 7 ¶ 16.)

13        Plaintiff informed defendant Popovits about all the issues plaintiff was having with

14   defendant L. Weichold, including the RVRs and falsely claiming poor work performance, but

15   defendant Popovits failed to intervene to stop the retaliatory acts.  (Id.)

16        Plaintiff alleges defendant L. Weichold retaliated against plaintiff for filing the grievance

17   concerning unpaid wages by writing two RVRs against plaintiff for performing his duties as the

18   MAC chairman, by falsifying the CDCR form 101 that claimed plaintiff's work performance was

19   unsatisfactory, and for recommending his removal from his job assignment.  (Id.)

20   III.  MOTION TO DISMISS

21        A.  Legal Standards Governing Motion to Dismiss

22        Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

23   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

24   considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

25   must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

26   (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

27   McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

28   1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

1   than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

2   cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words,

3   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

4   statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim

5   upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570.

6   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

7   draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556

8   U.S. at 678.

9       "As a general rule, 'a district court may not consider any material beyond the pleadings in

10  ruling on a Rule 12(b)(6) motion.'" Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.

11  2001) (quoting Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994)). Otherwise, the motion is

12  treated as one for summary judgment. Id. There are exceptions for material which is properly

13  submitted as part of the complaint and "matters of public record" which may be judicially

14  noticed. Id. at 688-89. "If the documents are not physically attached to the complaint, they may

15  be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint

16  necessarily relies' on them." Id. at 688 (quoting Parrino v. FHD, Inc., 146 F.3d 699, 705-06 (9th

17  Cir. 1998). Although the court may not consider a memorandum in opposition to a defendant's

18  motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Lee, 250 F.3d at 688,

19  the court may consider allegations raised in opposition papers in deciding whether to grant leave

20  to amend. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

21      A motion to dismiss for failure to state a claim should not be granted unless it appears

22  beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

23  entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se

24  pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner,

25  404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz

26  v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal

27  interpretation of a pro se complaint may not supply essential elements of the claim that were not

28  pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

6

B. <u>First Amendment Standards</u>

Prisoners have a First Amendment right to file a grievance or civil rights complaint against correctional officials. <u>Brodheim v. Cry</u>, 584 F. 3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).

C. <u>Screening</u>

Defendants first argue that dismissal is warranted despite the Court's screening of the complaint. (ECF No. 22 at 7.) Plaintiff "objects" to defendants' argument (ECF No. 26-1 at 11), but offers no facts or legal authorities in support of such objection.

The Court's screening is preliminary, as required by 28 U.S.C. § 1915A. On screening, a court's determination that a complaint may state cognizable claims does not preclude a defendant from subsequently bringing a motion to dismiss one or more of those claims under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Norsworthy v. Beard</u>, 87 F. Supp. 3d 1104, 1111 n.4 (N.D. Cal. Mar. 31, 2015) ("The issuance of a screening order under the Prison Litigation Reform Act finding that [plaintiff] has stated a cognizable claim does not foreclose defendants from moving to dismiss the complaint."); <u>Teahan v. Wilhelm</u>, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) ("[T]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring."). It is for this reason that the Court found in the screening order that "the second cause of action . . . states *potentially* cognizable First Amendment claims for relief against defendants L. Weichold and Popovits." (ECF No. 9 at 3) (emphasis added). Plaintiff cannot rely solely on the court's screening as a basis for overcoming a Rule 12(b)(6) motion. Plaintiff's objection is overruled.

///

///

///

7

1          D.  <u>Discussion:  Retaliation Claims</u>

2                  *1.  Adverse Action*

3                       a.  Governing Standards

4          The first element of a retaliation claim requires plaintiff to allege facts showing

5  defendants took adverse action against him.  <u>Rhodes</u>, 408 F.3d at 568.  A retaliation claim may

6  assert an adverse action that includes harm or the threat of harm.  <u>Brodheim</u>, 584 F.3d at 1269-70.

7  An adverse action need not be an independent constitutional violation, but inconsequential or de

8  minimis harms do not suffice.  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (to support

9  a claim a harm must be "more than minimal") (citations omitted).

10                      b.  The Parties' Arguments

11         Defendants argue that plaintiff failed to allege facts showing that the RVRs constituted

12  adverse actions.  Plaintiff failed to identify any punishment he received as a result of the RVRs,

13  and defendants point out that prisoners found guilty of an administrative RVR may be counseled.

14  (ECF No. 22 at 8.)  In addition, because plaintiff admitted he is serving life without parole (ECF

15  No. 11 at 17), defendants contend the RVRs would have no impact on plaintiff's parole

16  consideration.  (ECF No. 22 at 8.)

17         In opposition, plaintiff "objects to defendants' argument that counseling RVRs with no

18  discipline do not constitute adverse action."  (ECF No. 26-1 at 11.)  Plaintiff also argues that

19  defendants' proffered reason for the RVRs was false or pretextual.  (<u>Id.</u> at 17 (citing <u>Corales v.</u>

20  <u>Bennett</u>, 567 F.3d 554, 568 (9th Cir. 2009).)

21         Defendants respond that <u>Corales</u> does not support plaintiff's position, and contend

22  plaintiff offers no facts supporting his claim that defendant L. Weichold's intentions were

23  pretextual.  (ECF No. 26 at 3.)

24                      c.  Supporting Documents re: RVRs

25         With his opposition, plaintiff provided copies of the disciplinary hearing results from the

26  November 14, 2022 RVR No. 7240664, and the first page of the October 12, 2022 RVR No.

27  7231301.  (ECF No. 26-1 at 94-104.)  Both RVR No. 7240664 and RVR No. 7231301 are

28  referenced in plaintiff's complaint.  (ECF No. 1 at 11-12.)  Both plaintiff and defendants rely on

1    these documents and do not question their authenticity.  Therefore, the Court properly considers

2    these two documents submitted by plaintiff in reviewing the motion to dismiss without converting

3    the motion to a motion for summary judgment.  (ECF No. 26-1 at 94-104.)  See Dunn v. Castro,

4    621 F.3d 1196, 1205 n.6 (9th Cir. 2010) (courts may examine documents incorporated into the

5    complaint by reference when considering a 12(b)(6) motion); see also Branch, 14 F.3d at 453 (so

6    long as the authenticity of documents referenced in the complaint is not questioned, the

7    documents may be considered on a Rule 12(b)(6) motion to dismiss without converting the

8    motion into a summary judgment motion), overruled on other grounds by Galbraith v. Cnty. of

9    Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

10                        d.    Counseling RVRs

11          A "counseling only" chrono is issued when "minor misconduct recurs after verbal

12   counseling or if documentation of minor misconduct is needed."  Cal. Code Regs. tit. 15,

13   § 3312(a)(2).[3]  The regulations do not require that any action be taken as a result of a counseling

14   or informational chrono.  See Cal. Code Regs. tit. 15, §§ 3000, 3312.  Administrative rule

15   violations are identified in § 3314, and this section confirms that counseling dispositions, "with or

16   without a reprimand," are administrative in nature.  Cal. Code Regs. tit. 15, § 3314(e)(1).

17          As defendants argue, courts within the Ninth Circuit have held that counseling only RVRs

18   and custodial counseling chronos (as they were previously called), do not amount to adverse

19   actions.  See, e.g., Vallery, 2020 WL 7425343, at *4-5 ("Counseling Only Rules Violation Report

20   . . . is not an adverse action for plaintiff's retaliation claim."), findings and recommendations

21   adopted, 2021 WL 843614 (E.D. Cal. Mar. 5, 2021); Robinson v. Gen. Manager of Calpia, 2022

22   WL 5052680, at *7 (C.D. Cal. Aug. 22, 2022), report and recommendation adopted, 2022 WL

23   5081834 (C.D. Cal. Oct. 4, 2022) (counseling only RVRs "do not amount to adverse actions);

24

25   [3] CDCR introduced the "Counseling Only Rules Violation Report" in its 2016 amendments to
     the Title 15 regulations.  Cal. Code Regs. tit. 15, § 3312.  Prior to the amendment, minor
26   misconduct was documented on a "Custodial Counseling Chrono," referred to as a 128-B.  See
     Vallery v. Botkin, 2020 WL 7425343, at *3-4 (E.D. Cal. Dec. 18, 2020), findings and
27   recommendation adopted, 2021 WL 843614 (E.D. Cal. Mar. 5, 2021).  After the amendment,
     § 3312 subsection (a)(2) required that minor misconduct be "documented on a Counseling Only
28   Rules Violation Report."  Id. at *3.

1   Heilman v. Furster, 2018 WL 2588900, at *11 (C.D. Cal. May 1, 2018) (collecting cases and

2   finding the "lack of concrete harm -- whether threatened or immediate -- undermines the

3   allegation that the [Counseling] Chronos were adverse actions.")), findings and recommendations

4   adopted, 2018 WL 2472891 (C.D. Cal. May 31, 2018)).  But other district courts disagree.  See

5   Clemente v. Stinson, 2022 WL 584210, at *4 (E.D. Cal. Feb. 25, 2022) (informational counseling

6   chrono had "direct and harmful consequence" of denial of plaintiff's application for single-cell

7   status); Brown v. Chothia, 2021 WL 2913076, at *13 (E.D. Cal. July 12, 2021) (rejecting

8   proposition that "only formal discipline" from a counseling chrono may constitute an adverse

9   action), report and recommendation adopted, 2021 WL 4132341 (E.D. Cal. Sept. 10, 2021).

10         Here, although plaintiff was issued RVRs on two occasions, the documents confirm that

11  the disposition in RVR No. 7231301 was classified as "counseling only" and a "counseling

12  chrono," and the disposition in RVR No. 7240664 was classified as "Counseling Regarding

13  Misconduct:  with reprimand."  (ECF No. 26-1 at 99, 101, 104.)  The Court agrees with

14  defendants that the two counseling only RVRs issued to plaintiff were not adverse actions for

15  plaintiff's retaliation claim against defendant L. Weichold.  The reasoning of the district courts

16  finding custodial counseling chronos not to be adverse actions, set forth above, applies equally to

17  plaintiff's claims alleging the counseling only RVRs constitute an adverse action.  In the instant

18  case, the counseling only RVRs issued to plaintiff were informational only with no disciplinary

19  effect.  Based on these circumstances, it is not likely that issuance of the counseling only RVRs

20  would chill First Amendment activities.

21         Plaintiff also contends that defendant L. Weichold's proffered reason for writing the two

22  RVRs was false or pretextual because plaintiff was previously allowed to write memorandum as

23  approved by Warden Matteson, and other facility MAC representations also prepared their

24  agendas and correspondence on stationery that had "memorandum" on it.  (ECF No. 25 at 13.)

25  But even assuming the RVRs were false, plaintiff failed to show the RVRs were anything other

26  than informational.  See Williams v. Woddford, 2009 WL 3823916, at *3 (E.D. Cal. Nov. 13,

27  2009) ("[T]he alleged filing of the false administrative chrono fails to state a claim because it is

28  not a sufficient adverse action for a [First Amendment] retaliation claim because the chrono was

1  merely informational.").  This is because counseling reports serve to inform a prisoner of minor

2  misconduct, and that continued misbehavior may result in consequences.  See Arrant v. Santoro,

3  2021 WL 1721432, at *3 (E.D. Cal. Apr. 30, 2021).  As in Woddford, the two RVRs issued to

4  plaintiff by defendant L. Weichold were informational and addressed alleged minor misconduct.

5       Plaintiff does not argue that the RVRs would negatively impact his parole consideration.

6  (ECF Nos. 1, 26-1.)  Nor could he.  Plaintiff admitted he is serving life without parole.  (ECF No.

7  1 at 17.)  Thus, the counseling only RVRs would have no impact on the duration of his

8  confinement.

9       *2. Retaliation:  Retaliatory Motive*

10            a.  Governing Standards

11       To prove the second element, retaliatory motive, plaintiff must show that his protected

12  activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct.

13  Brodheim, 584 F.3d at 1269, 1271.  A retaliatory motive may be shown by the timing of the

14  allegedly retaliatory act or other circumstantial evidence, as well as direct evidence.  McCollum

15  v. Cal. Dep't of Corr. and Rehab., 647 F.3d 870, 882 (9th Cir. 2011); Bruce v. Ylst, 351 F.3d

16  1283, 1288-89 (9th Cir. 2003).[4]  In addition to demonstrating defendant's knowledge of

17  plaintiff's protected conduct, circumstantial evidence of motive may include:  (1) proximity in

18  time between the protected conduct and the alleged retaliation; (2) defendant's expressed

19  opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for

20  the challenged action were false or pretextual.  McCollum, 647 F.3d at 882.  "[P]laintiff must

21  show that the defendant's retaliatory animus was 'a "but-for" cause, meaning that the adverse

22  action against the plaintiff would not have been taken absent the retaliatory motive.'"  Capp v.

23  Cnty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019) (as amended) (citation omitted).  Mere

24  speculation that a defendant acted out of retaliation is not sufficient.  Wood v. Yordy, 753 F.3d

25  899, 904 (9th Cir. 2014) (citing cases).

26  _____

27  [4]  In Bruce, the court held that the "some evidence" standard applied to the civil rights plaintiff's
    Fourteenth Amendment due process claim but did not apply to a First Amendment retaliation
    claim where the plaintiff alleged that the defendants validated him as a prison gang affiliate in
28  retaliation for his jailhouse lawyering activities.  351 F.3d at 1289.

1                            b.  The Parties' Arguments

2            Defendants argue plaintiff failed to allege facts demonstrating defendant L. Weichold's

3    actions were motivated by plaintiff's protected conduct based on the following.  First, plaintiff's

4    allegations demonstrate that both defendants were acting pursuant to the warden's instructions.

5    (ECF No. 22 at 9 (citing ECF No. 1 at 7 ¶ 16; 13 ¶¶ 29-30).)  Plaintiff admits both defendants

6    instructed him several times to change the memorandum format.  (Id. (citing ECF No. 1 at 10

7    ¶¶ 3-9, 11 ¶ 12).)  Plaintiff initially complied, but plaintiff stopped complying and argued he was

8    permitted to draft the memorandum because he had done so since 2019, and because Warden

9    Matteson wrote a memo in 2019 explaining that plaintiff would write memorandum as MAC

10    Chairman.  (Id. (citing ECF No. 1 at 10 ¶ 5-6, 12 ¶¶ 19, 22).)  But plaintiff also concedes that

11    defendant L. Weichold had been instructed by Warden Matteson to implement changes to

12    plaintiff's correspondence.  (Id. (citing ECF No. 1 at 11 ¶ 17).)  Because defendant L. Weichold

13    was acting pursuant to the warden's instructions, plaintiff cannot demonstrate that his protected

14    conduct was defendants' substantial motivating factor.  (Id. (citing Brodheim, 584 F.3d at 1271).)

15            Second, plaintiff cannot show retaliatory motive because plaintiff admits he disobeyed his

16    supervisor's instructions which led to the RVRs.  (Id.)  Plaintiff kept using the term

17    "memorandum" on his correspondence, contrary to his supervisor's instructions.  (Id. (citing ECF

18    No. 1 at 11 ¶ 16, 12 ¶¶ 22-23).)  Consequently, plaintiff was issued two RVRs for disobeying

19    orders.  (Id. (citing ECF No. 1 at 11 ¶ 15, 12 ¶ 22).)  Thus, defendant L. Weichold was motivated

20    by plaintiff's misconduct, not his protected conduct.

21            Third, the long periods between plaintiff's protected conduct and defendants' purported

22    adverse actions undermines plaintiff's theory of retaliation.  (Id. at 10 (citing Huskey v. City of

23    San Jose, 204 F.3d 893, 899 (9th Cir. 2000).)  Plaintiff claims he filed a grievance in February

24    2022, but received the first counseling RVRs eight months later.  (Id.)  Such eight month delay is

25    insufficient to establish motive.  (Id. (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-

26    74 (2001) (citing cases finding periods of three and four months too long)).)  Plaintiff's poor work

27    performance review took place about 22 months later, suggesting no causal relationship.  (Id.

28    (citing Clark Cnty., 532 U.S. at 274) (actions taken 20 months after protected conduct "suggests,

1    by itself, no causality at all.").)  Plaintiff's grievance submitted some time after December 2023

2    (ECF No. 1 at 7 ¶ 16) cannot constitute motivation because it took place after the purported

3    adverse conduct by defendant L. Weichold.  (Id.)

4         Fourth, plaintiff's "own allegations show defendant L. Weichold was unfazed by the

5    grievances." (ECF No. 22 at 11.)  The quotes attributed to L. Weichold show she was aware of

6    plaintiff's protected conduct, but not that she was opposed to such conduct.  (Id.)  Plaintiff

7    provided no facts showing either defendant tried to prevent or discourage plaintiff from filing

8    grievances, and kept filing grievances after the purported adverse conduct.  (Id. (citing ECF No. 1

9    at 7 ¶ 16, 13 ¶ 27).)

10         In opposition,  plaintiff first claims that "on April 21, 202[2],"[5] his grievance was

11   accepted by the grievance office, and 11 days later, on May 2, 2022, defendants informed plaintiff

12   he was no longer allowed to send MAC correspondence on memorandum paper that bore State of

13   California CDCR at the top.  (ECF No. 25 at 14.)  Plaintiff reiterated allegations from his

14   complaint.  (Id. at 14-16.)  Plaintiff contends that the timing of the retaliatory acts and the

15   inconsistency with prior actions demonstrate defendant L. Weichold's retaliatory motive.  (Id. at

16   14 (citing Bruce, 351 F.3d at 1288-89).)  Plaintiff argues he used the memorandum forms with

17   CDCR at the top since 2019, and wrote memorandum at the direction of Warden Matteson,

18   specifically quoting from the warden's memo.  (Id. at 14-15.)  Plaintiff claims his grievance

19   against defendant L. Weichold was accepted on April 21, 2022, and 11 days later, she began

20   harassing plaintiff by telling him he could no longer have CDCR on the top of his

21   correspondence.  (Id. at 14.)  Then, after removing CDCR and putting CSP-SOL at the top,

22   defendant L. Weichold again harassed plaintiff by telling him the MAC was no longer allowed to

23   use the word "memorandum" on its correspondence.  (Id. at 16-17.)  Defendant L. Weichold then

24   wrote two RVRs against plaintiff for disobeying her orders.  (Id. at 17.)

25         Second, plaintiff contends L. Weichold's proffered reason for writing the RVRs was

26

27   _____

     [5]  In his opposition, plaintiff claims this acceptance took place on April 21, 2021 (id. at 10, 12),
     which appears to be a typographical error because it challenged the failure to pay wages for dates
28   after April 2021, and the "11 days later" allegation confirms he meant April 21, 2022.

1   pretextual or false because plaintiff was allowed to prepare memorandum as approved by Warden

2   Matteson.  (Id. at 17 (citing Corales, 567 F.3d at 568).)  In addition, plaintiff argues that other

3   MAC representatives prepared their agendas and correspondence on stationery that had

4   "memorandum" on it.  (Id.)

5           In reply, defendants contend that plaintiff's reliance on Bruce is inopposite because in

6   Bruce, the alleged adverse action took place less than a month after the protected conduct, and

7   here, plaintiff's counseling RVRs were issued eight months after his protected conduct.  (ECF

8   No. 26 at 2.)  In addition, plaintiff's claim of inconsistency is not comparable to Bruce's claim

9   that he was validated as a gang member based on stale and insufficient evidence.  (Id.)  Rather,

10  defendant L. Weichold instructed plaintiff to change the format of his memorandum.  (Id. at 3

11  (citing ECF No. 26-1 at 104).)  Defendants argue that plaintiff offers "no support for his argument

12  that defendant L. Weichold could not have implemented changes to his memorandum formats

13  simply because he was using the formats before."  (Id.)  Further, unlike Bruce, where the

14  investigator told Bruce he was being validated as a gang member to make an example out of him

15  because of his grievances, plaintiff provides no facts demonstrating defendant L. Weichold

16  retaliated against plaintiff because of his grievance.  (Id.)

17          Defendants also contend plaintiff's reliance on Corales is unavailing because in Corales,

18  the court found that the prisoner failed to demonstrate a pretextual motive because there was no

19  evidence that the defendant treated him differently than others.  (Id.)  Defendants argue that

20  plaintiff's exhibits undermine his claim because they show the warden disapproved of the

21  memorandum formats.  (Id. at 3-4 (citing ECF No. 26-1 at 99 ("[Plaintiff] met with Lt. J.

22  Guerrero to go over the disapproved agenda email by the Warden Secretary Perreira"); ECF No.

23  26-1 at 69 (Inmate Bender's declaration stating defendant L. Weichold told Bender that "she

24  spoke directly to the Warden (Matteson) and that the Warden said [plaintiff] was no longer

25  allowed to send MAC correspondence that had memorandum on it.").)  Defendants argue these

26  documents do not show plaintiff was being treated differently than others under some pretext.

27  (Id. at 4.)

28  ///

1            c. Discussion

2        Initially, the Court does not agree with defendants that plaintiff admits he disobeyed his

3 supervisor's instructions. Defendants cite specific paragraphs in plaintiff's complaint, and allege

4 plaintiff admits he disobeyed his supervisor's instructions, and that led to the RVRs. (ECF No.

5 22 at 9 (citing ECF No. 1 at 11 ¶ 16, 12 ¶¶ 22-23).) The Court does not read these paragraphs as

6 plaintiff's admission, but rather his recitations of what happened. "All factual allegations set

7 forth in the complaint are taken as true and construed in the light most favorable to [p]laintiff[]."

8 Lee, 250 F.3d at 688 (internal quotation marks and citation omitted). Further, in their reply,

9 defendants argue that plaintiff's statement attributed to plaintiff during the hearing on RVR No.

10 7240664 support their claim that plaintiff cannot establish a retaliatory motive. (ECF No. 26 at 6

11 (citing ECF No. 26-1 at 91).) Although the Court considers the two disciplinary hearing

12 documents submitted by plaintiff and relied upon by both sides in reviewing the motion to

13 dismiss, the Court will not presume that statements attributed to plaintiff in that document are

14 true. Aside from the two documents the Court described above, the Court has not considered any

15 other exhibits in reviewing the motion to dismiss, even if referenced in the parties' briefing. See

16 Lee, 250 F.3d at 688.

17        Turning to the remaining arguments, the Court finds that plaintiff's allegations fail to

18 show that defendants' actions would not have been taken absent a retaliatory motive. Rather,

19 plaintiff alleges that on October 20, 2022, defendant L. Weichold told inmate Bender that she

20 spoke directly to Warden Matteson, who told her that plaintiff was no longer allowed to send in

21 correspondence that had memorandum written on it. (ECF No. 1 at 11 ¶ 17.) Plaintiff alleges

22 that both defendants instructed plaintiff multiple times to change his memorandum formats. (Id.

23 at 10 ¶¶ 3-9; 11 ¶ 17.) In addition, RVR No. 7231301 shows that defendant L. Weichold ordered

24 plaintiff to change the memorandum format to avoid having the memorandum look like they were

25 issued by staff, a legitimate correctional purpose. (ECF No. 26-1 at 104.) Because defendant L.

26 Weichold was acting pursuant to the warden's instructions, plaintiff cannot demonstrate that his

27 protected conduct was defendants' substantial motivating factor. See Brodheim, 584 F.3d at

28 1271. In addition, while plaintiff was previously allowed to draft memorandum a certain way, he

1    provides no facts or legal authorities demonstrating that the warden could not change the way

2    memorandum or other MAC correspondence could be drafted.

3        Plaintiff's timeliness arguments fare no better.  In his opposition, plaintiff attempts to

4    shorten the initial period by claiming his first grievance, submitted in February 2022, was

5    "accepted" on April 21, 2022.  However, in his complaint, plaintiff claims the grievance was

6    "redirected," without explaining why or to whom it was redirected.  (Id. at 10 ¶ 2.)  The Court

7    need not speculate as to whether the grievance was accepted or redirected in April 2022, because

8    it is insufficient to support his arguments.  Plaintiff received the first counseling only RVR on

9    October 12, 2022, and the second on November 14, 2022.  (ECF No. 1 at 11 ¶ 15; 12 ¶ 21.)  Even

10    if the Court found defendant L. Weichold did not find out about the first RVR until April 2022,

11    absent other allegations showing an improper motive, the timing of the RVRs does not support an

12    inference that defendant J. Weichold acted with an intent to retaliate.  As one district court stated:

13            Timing may sometimes provide circumstantial evidence of
             retaliatory intent when adverse conduct takes place shortly after the
14            plaintiff engages in protected conduct.  But retaliatory intent is not
             established simply by showing adverse activity after the occurrence
15            of protected speech, rather the plaintiff must allege a "nexus"
             between the two events.
16

17    Hill v. Rhude, 556 F. Supp. 3d 1144, 1151-52 (D. Nev. Aug. 25, 2021); Huskey, 204 F.3d at 899

18    (finding plaintiff failed to introduce evidence demonstrating a nexus between his statements to

19    defendant and any adverse action he may have suffered).  Plaintiff's complaint alleges no facts

20    demonstrating a nexus, and plaintiff does not allege that defendant L. Weichold expressed any

21    opposition to his filing grievances.  To the extent plaintiff claims the timing of the poor work

22    performance review demonstrates a retaliatory motive, such claim fails because it took place

23    about 22 months after plaintiff's first grievance was submitted in February 2022.  See Clark

24    Cnty., 532 U.S. at 273-74.  Retaliatory motivation is not established by alleging adverse action

25    took place after the plaintiff's protected conduct.  Huskey, 204 F.3d at 899 (stating a retaliation

26    claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this,

27    therefore because of this'").

28        Plaintiff does claim defendant L. Weichold made statements that refer to plaintiff filing

16

1    grievances: "I don't care about the 602," and "You can write me up, I'm gonna write you up and

2    you're gonna lose." (ECF No. 1 at ¶¶ 12, 16.) But such statements, standing alone, only show

3    her awareness that plaintiff filed a grievance, not that she was opposed to plaintiff filing a

4    grievance. See McCollum, 647 F.3d at 882.

5        The Court agrees with defendants that plaintiff's reliance on Bruce, 351 F.3d at 1288-89,

6    is unavailing. Aside from being distinguishable on its facts, in this case, unlike in Bruce,

7    defendants' actions were motivated by plaintiff's failure to follow their instructions to modify the

8    memorandum format, and plaintiff failed to plead the absence of legitimate correctional goals, as

9    discussed next. Also, unlike in Bruce, where the investigator told Bruce he was being validated

10   as a gang member to make an example out of him because of his grievances, plaintiff provides no

11   facts showing any defendant took actions against plaintiff because of his February 2022 grievance

12   or other protected conduct.

13       The Court finds that plaintiff has not alleged sufficient facts to demonstrate a retaliatory

14   motive on the part of defendants.

15              *3. Retaliation: Legitimate Correctional Goals*

16                  a. The Parties' Arguments

17       Defendants argue that plaintiff failed to allege the absence of legitimate correctional goals.

18   (ECF No. 22 at 11.) The court should give deference to prison officials' "adoption and execution

19   of policies and practices that in their judgment are needed to preserve the internal order and

20   discipline to maintain institutional security." (Id. (quoting Anderson v. Cnty. of Kern, 45 F.3d

21   1310, 1316 (9th Cir.), op. amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995)).) Because

22   plaintiff admits he disregarded his supervisor's instructions, defendants should be given deference

23   to preserve discipline and order.

24       Plaintiff does not address this element with facts or law; rather, he again "objects to

25   defendants' argument that he failed to allege an absence of legitimate correctional goals." (ECF

26   No. 26-1 at 11.)

27       In reply, defendants point to the reported circumstances of violation contained in RVR

28   No. 7231301 in which defendant L. Weichold explained she ordered plaintiff to remove the

17

1   particular formatting he was using because it "looks just like a memorandum coming from the

2   staff," which demonstrates defendant L. Weichold was motivated to prevent confusion between

3   staff and prisoner forms.  (ECF No. 26 at 6 (citing ECF No. 26-1 at 104).)  Defendants argue that

4   plaintiff fails to address the legitimate penological interest in making sure prisoner memorandum

5   appear distinct from staff memorandum, and to ensure prisoners follow staff orders, and thus, the

6   court should defer to defendants' judgment.  (Id. at 6-7.)

7                         b.  Governing Standards

8         A prisoner bringing a First Amendment retaliation claim "bears the burden of pleading

9   and proving the absence of legitimate correctional goals for the conduct of which he complains."

10  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (the prisoner "must show that there were no

11  legitimate correctional purposes motivating the actions he complains of.").

12                        c.  Discussion

13        The Court agrees with defendants that plaintiff fails to allege the absence of a legitimate

14  correctional goal.  Moreover, in RVR No. 7231301, defendant L. Weichold reported that:

15            I have given multiple direct orders to Inmate Stevenson to take out
             the formatting utilized in the Men's Advisory Council agenda form
16            which states "Memorandum" and "Solano, California State Prison."
             Utilizing "Memorandum" and "Solano, California State Prison"
17            resembles CDCR Staff Memorandums formatting. He learned this
             formatting from one of the CSP-Solano's staff, therefore all of his
18            agendas look just like a memorandum coming from the staff. I talked
             to him about this previously and talked to him again recently on
19            9/29/22. The problem is still on going. I have been giving all his
             agenda form back to him so that he can change it, but he feels that
20            it's not necessary to for him to do what I told him to do.

21  (ECF No. 26-1 at 104.)  Making sure that the source of MAC correspondence is clear, particularly

22  as between staff versus prisoners, is a legitimate correctional goal.  In addition, it is important that

23  prisoners obey direct orders.  In his complaint, plaintiff included no facts showing defendants'

24  actions were taken without a legitimate correctional goal.  (ECF No. 1, passim.)  Thus, plaintiff

25  fails to demonstrate either defendant acted with an absence of legitimate correctional goals.

26                   *4.  Chilling Effect*

27        While allegations of harm "that is more than minimal" are generally sufficient to plead a

28  "chilling effect," the Court notes plaintiff fails to allege such a "chilling effect."  See Jenkins v.

18

1    Drake, 2020 WL 2771999, at *9 (C.D. Cal. May 5, 2020) (dismissing retaliation claim and noting

2    that the prisoner continued to file grievances and threatened court action to protect his rights, and

3    the amended pleading failed to make even conclusory allegations about the chilling effect of

4    defendants' actions); see also Ingram v. McDowell, 2023 WL 9507681, at *11 (C.D. Cal. Dec.

5    19, 2023).  As discussed above, the counseling only RVRs are administrative in nature, serving an

6    informational purpose, and did not pose sufficient harm to cause a chilling effect.  Moreover, the

7    Court notes plaintiff did continue filing grievances.  (ECF No. 1 at 7 ¶ 16; 13 ¶ 27.)

8                    *5.  Supervisory Liability:  Defendant Popovits*

9           To state a claim under § 1983, a plaintiff must demonstrate:  (1) the violation of a federal

10    constitutional or statutory right; and (2) that the violation was committed by a person acting under

11    the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d

12    930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the

13    facts establish the defendant's personal involvement in the constitutional deprivation or a causal

14    connection between the defendant's wrongful conduct and the alleged constitutional deprivation.

15    See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44

16    (9th Cir. 1978).  That is, plaintiff may not sue any official on the theory that the official is liable

17    for the unconstitutional conduct of his or her subordinates.  Iqbal, 556 U.S. at 679.  The requisite

18    causal connection between a supervisor's wrongful conduct and the violation of the prisoner's

19    constitutional rights can be established in a number of ways, including by demonstrating that a

20    supervisor's own culpable action or inaction in the training, supervision, or control of his

21    subordinates was a cause of plaintiff's injury.  Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011).

22           As argued by defendants, plaintiff fails to demonstrate that defendant Popovits acted in a

23    retaliatory way.  Instead, plaintiff's allegations that defendant Popovits failed to intervene when

24    told of the RVRs and performance evaluation by defendant L. Weichold is based on respondeat

25    superior liability; that is, defendant Popovits is only liable because he failed to properly supervise

26    his subordinate, defendant L. Weichold.  But this form of liability is not available under § 1983.

27    See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding there is no respondeat superior

28    liability under § 1983; a supervisor is only liable for the constitutional violations of subordinates

19

1  if the supervisor participated in or directed the violations).  Here, there are no facts demonstrating

2  that defendant Popovits participated in any alleged retaliatory acts or directed defendant L.

3  Weichold to conduct such acts.  See Peets v. Brown, 2019 WL 1539183, at *3 (E.D. Cal. Apr. 9,

4  2019).  Further, as argued by defendants, because the Court finds that plaintiff's retaliation claim

5  against defendant L. Weichold fails, plaintiff cannot demonstrate that defendant Popovits refused

6  to "terminate a series of acts by others, which [the supervisor] knew or reasonably should have

7  known would cause others to inflict a constitutional injury."  Rodriguez v. Cnty. of L.A., 891

8  F.3d 776, 798 (9th Cir. 2018) (citation omitted).  Defendants' motion to dismiss defendant

9  Popovits from this action should be granted.

10  *6. Conclusion:  Retaliation Claims*

11  For the above reasons, the Court finds that plaintiff fails to state cognizable First

12  Amendment retaliation claims against defendant L. Weichold and defendant Popovits.

13  E.  Property Rights

14  In his opposition, plaintiff renews his arguments concerning a denial of his property rights

15  under the Due Process Clause of the Fourteenth Amendment.  (ECF No. 36-1 at 17-19.)

16  However, on November 5, 2024, based on plaintiff's election, plaintiff's due process claims were

17  dismissed without prejudice.  (ECF No. 15.)  Thus, the Court does not address plaintiff's due

18  process/ property arguments raised in his opposition.

19  F.  Qualified Immunity

20  *1. Legal Standards*

21  "The doctrine of qualified immunity protects government officials 'from liability for civil

22  damages insofar as their conduct does not violate clearly established statutory or constitutional

23  rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223,

24  231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity

25  shields an officer from liability even if his or her action resulted from "a mistake of law, a

26  mistake of fact, or a mistake based on mixed questions of law and fact."  Id. (internal quotation

27  marks and citation omitted).

28  "Determining whether officials are owed qualified immunity involves two inquiries:

1   (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged

2   show the official's conduct violated a constitutional right; and (2) if so, whether the right was

3   clearly established in light of the specific context of the case." Robinson v. York, 566 F.3d 817,

4   821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). A right is "clearly

5   established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are]

6   sufficiently clear' that 'every reasonable official would [have understood] that what he is doing

7   violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v.

8   Creighton, 483 U.S. 635, 640 (1987)).

9              *2. Discussion*

10      Defendants move for qualified immunity on the grounds that the complaint fails to

11  establish a First Amendment violation and argues that there "is no clearly established law holding

12  that issuing RVRs without discipline to an inmate who is admittedly guilty of misbehavior is a

13  violation of the First Amendment. (ECF No. 22 at 13 (citing Vallery, 2020 WL7425343, at *8)

14  (granting qualified immunity on retaliation claims where plaintiff failed to state a claim because

15  counseling RVRs do not constitute adverse action qualified immunity grounds).) In addition,

16  defendants argue there is no clearly established law that issuing a poor work performance

17  evaluation for legitimate reasons over a year after protected conduct would be considered

18  retaliation. (Id. (citing Baumann v. Ariz. Dep't of Corr., 754 F.2d 841, 846 (9th Cir. 1985)

19  (general limit of jobs and educational opportunities not considered punishment).) Finally,

20  defendants contend it is not clearly established that a supervisor violates the First Amendment

21  where he did not participate in or direct any of the allegedly retaliatory acts. (Id. (citing Peets,

22  2019 WL 1539183, at *3 (explaining that a supervisor cannot be liable for retaliation simply

23  because he knew of the subordinate's actions.)).)

24      Plaintiff argues defendants are not entitled to qualified immunity because prisoners have a

25  right to file a grievance and to be free from retaliation for doing so. (ECF No. 26-1 at 16 (citing

26  Rhodes, 408 F.3d at 567-68).) Defendants respond that plaintiff's reliance on Rhodes is

27  unavailing because the standard for qualified immunity requires case-specific context. (ECF No.

28  26 at 5 (citing Saucier, 533 U.S. at 201).)

21

1 Because the Court found plaintiff failed to state a First Amendment claim, "there is no

2 necessity for further inquiries concerning qualified immunity." See Saucier, 533 U.S. at 201.

3 Thus, the Court declines to address the issue of qualified immunity.

4 IV.    LEAVE TO AMEND

5 If the Court finds that a complaint fails to state a claim, the Court has discretion to dismiss

6 with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en

7 banc). A court should freely grant leave to amend if it appears possible that the defects in the

8 complaint could be corrected. See id. at 1130-31. However, if, after careful consideration,

9 amendment cannot clearly cure the deficiencies in a complaint, the Court may dismiss without

10 leave to amend. Cato v. United States, 70 F.3d 1103, 1105-06 (9th Cir. 1995); see also id. ("A

11 pro se litigant must be given leave to amend his or her complaint, and some notice of its

12 deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured

13 by amendment."). In other words, dismissal of a pro se complaint without leave to amend is

14 proper only if it is "absolutely clear that no amendment can cure the defect." Rosati v. Igbinoso,

15 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir.

16 2012)); see Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011)

17 ("Although leave to amend should be given freely, a district court may dismiss without leave

18 where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and

19 amendment would be futile.").

20 The Court finds the deficiencies outlined above are not capable of being cured by

21 amendment. Specifically, plaintiff cannot demonstrate that the RVRs were adverse actions that

22 would support a First Amendment retaliation claim, and defendants acted with a legitimate

23 correctional goal that precludes a retaliation action. Pratt, 65 F.3d 806. Therefore, leave to

24 amend is futile and should not be granted. Lopez, 203 F.3d at 1127.

25 V.    DEFENDANTS' MOTION TO STRIKE

26 On April 10, 2025, plaintiff filed a document styled, "Opposition and Objections to

27 Defendants' Reply in Support of Motion to Dismiss." (ECF No. 27.) The Court construes

28 plaintiff's filing as a sur-reply to defendants' reply. On April 17, 2025, defendants filed a motion

22

1    to strike plaintiff's unauthorized sur-reply.  (ECF No. 28.)

2          The Local Rules do not authorize the routine filing of a sur-reply.  Nevertheless, when a

3    party has raised new arguments in a reply to an opposition, the court may permit the other party to

4    counter the new arguments.  Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. 2005); accord

5    Norwood v. Byers, 2013 WL 3330643, at *3 (E.D. Cal. 2013) (granting the motion to strike the

6    sur-reply because "defendants did not raise new arguments in their reply that necessitated

7    additional argument from plaintiff, plaintiff did not seek leave to file a sur-reply before actually

8    filing it, and the arguments in the sur-reply do not alter the analysis below"), findings and

9    recommendations adopted, 2013 WL 5156572 (E.D. Cal. 2013).

10          Here, defendants' reply addressed the arguments in plaintiff's opposition; the reply raised

11    no new arguments or theories.  Moreover, plaintiff did not seek leave to file a sur-reply, and his

12    arguments therein do not impact the Court's analysis.  Finally, plaintiff provided almost 200

13    pages of exhibits (ECF No. 27 at 19-213) which generally cannot be considered on a motion to

14    dismiss.  See Lee, 250 F.3d at 688; Cervantes, 5 F.3d at 1274.  For these reasons, the Court grants

15    defendants' motion to strike plaintiff's sur-reply.

16    VI.    CONCLUSION

17          Accordingly, IT IS HEREBY ORDERED that:

18          1.  Defendants' motion to strike plaintiff's unauthorized sur-reply (ECF No. 28) is

19    granted; and

20          2.  The Clerk of the Court is directed to strike plaintiff's unauthorized sur-reply (ECF No.

21    27).

22          Further, IT IS RECOMMENDED that:

23          1.  Defendants' motion to dismiss (ECF No. 22) be granted, and

24          2.  This action be dismissed with prejudice.

25          These findings and recommendations are submitted to the United States District Judge

26    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

27    after being served with these findings and recommendations, plaintiff may file written objections

28    with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

2  failure to file objections within the specified time may waive the right to appeal the District

3  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4

5  Dated:  July 25, 2025

6  _____

7  CHI SOO KIM
   UNITED STATES MAGISTRATE JUDGE

8  /1/stev1315.mtd

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24